**UNITED STATES of America,**
**Appellee,**

v.

**Robert L. YOUNGBLOOD, Appellant.**

**No. 435, Docket 30748.**

United States Court of Appeals
Second Circuit.

Argued May 1, 1967.

Decided June 21, 1967.

John S. Allee, Douglas S. Liebhafsky, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Phylis Skloot Bamberger, Anthony F. Marra, New York City, for appellant.

Before WATERMAN, FRIENDLY and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant was convicted after a trial in the United States District Court for the Southern District of New York before a judge sitting without jury. The indictment contains six counts. Counts one and two charge appellant with making an illegal sale of narcotics on June 22, 1965 in violation of 26 U.S.C. §§ 4705(a), 7237(b) (Count 1), and 21 U.S.C. §§ 173, 174 (Count 2). Counts three and four charge violations on July 7, 1965 of the same statutes. Count five charges appellant with receiving, concealing, and facilitating the transportation and concealment of narcotics on August 24, 1965 in violation of 21 U.S.C. §§ 173, 174 and count six with unlawful possession of the same narcotics in violation of 26 U.S.C. §§ 4701, 4703, 4704(a), 4771(a) and 7237(a). Appellant received concurrent sentences of five years imprisonment on each of the six counts.

The Government's witnesses testified that appellant made the June 22nd and July 7th sales to narcotics agent Ward who was acting in an undercover capacity as one interested in purchasing drugs. The physical movements of appellant and Ward on these occasions as testified to by Ward were corroborated by another agent, but the conversations between appellant and Ward, which showed that appellant was well aware that he was dealing in narcotics, were only testified to by agent Ward. Appellant's defense to the charges involving the sales to Ward was his personal testimony that as an accommodation to another person he had delivered to Ward packages which he believed to be diamonds. He further testified that his conversation with Ward in no way indicated that the packages contained narcotics.

Appellant claims that the trial court erred under the rule of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), a case decided more than eight months after the trial court

here refused to permit appellant to inspect the transcript of agent Ward's grand jury testimony. The judge followed the procedure which we have prescribed for this circuit in several cases, e. g., United States v. Hernandez, 290 F. 2d 86 (2 Cir. 1961) ; he examined the grand jury minutes *in camera,* and, concluding that they contained no inconsistencies from agent Ward's trial testimony, refused to allow the defense to examine them.

As agent Ward did not testify with reference to the August 24th possession violations, counts five and six, the Government contends that any error in refusing to permit inspection of his grand jury testimony could not have affected appellant's conviction on those counts and, in view of the concurrent sentences, it is unnecessary for us, under the familiar rule, to consider any claims of error affecting conviction on the first four counts. Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) and cases there cited; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407 (1925) and cases there cited. However, we need not place decision on that ground for we find no error was committed by the failure of the court to turn over the grand jury minutes.

In examining appellant's claim it is necessary to give particular consideration to three Supreme Court cases on the subject, United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) ; Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) ; and the case principally relied upon by appellant, Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840 (1966). All three of these cases stand for the proposition that the trial court need not allow the defense to examine grand jury minutes in the absence of a showing of a "particularized need," United States v. Procter & Gamble Co., supra, 356 U.S. at 683, 78 S.Ct. 983, cited in *Pittsburgh Plate Glass,* supra at 360 U.S. 399, 79 S.Ct. 1237, and *Dennis,* supra, 384 U.S. at 870, 86 S.Ct. 1840. Disclosure may be limited to that portion of the grand jury minutes for which the necessity of examination had been shown, for defendants have no absolute right to any wholesale disclosure of grand jury testimony. *Pittsburgh Plate Glass,* supra; see *Procter & Gamble,* supra. The major distinction to be drawn between the two earlier cases and *Dennis* is that the defendants in both of the earlier cases sought a wholesale disclosure of grand jury testimony as a matter of right, while in *Dennis* the defendants only sought a disclosure of particular testimony for which they had demonstrated particular need. After considering the *Dennis* defendants' showing of their need to examine the grand jury minutes, the Court found that the required showing had been made and held that the defendants should have been allowed to examine the particular grand jury minutes for which they had demonstrated need.

In *Dennis* the Court found a showing of need to examine the minutes based on five circumstances:

1. The events as to which the testimony in question related occurred between 1948 and 1955. The grand jury testimony was taken in 1956, while these events were relatively fresh. The trial testimony which petitioners seek to compare with the 1956 grand jury testimony was not taken until 1963. Certainly, there was reason to assay the latter testimony, some of which is 15 years after the event against the much fresher testimony before the grand jury.

2. The motions in question involved the testimony of four of the eight government witnesses. They were key witnesses. The charge could not be proved on the basis of evidence exclusive of that here involved.

3. The testimony of the four witnesses concerned conversations and oral statements made in meetings. It was largely uncorroborated. Where the question of guilt or innocence may turn on exactly what was said, the de-

fense is clearly entitled to all relevant aid which is reasonably available to ascertain the precise substance of the statements.

4. Two of the witnesses were accomplices, one of these being also a paid informer. A third had separated from the union and had reasons for hostility toward petitioners.

5. One witness admitted on cross-examination that he had in earlier statements been mistaken about significant dates. 384 U.S. at 872–873, 86 S.Ct. at 1850.

Upon comparing the circumstances in *Dennis* with those here we find Young-blood's showing of particularized need to be substantially weaker than the showing made by the defendants in *Dennis*. The trial began within a few months of the occurrence of the crimes, and there was no significant time lag between the appearance of the witness before the grand jury and his appearance at the trial. The witness was neither an accomplice nor a paid informer but was a government agent, and there had been no suggestion that he had any animosity toward the defendant or that he had made any prior statements inconsistent with his trial testimony.[1]

■ Two of the five circumstances mentioned by the Court in *Dennis* do appear to be present here. Ward was the key government witness; it is doubtful whether appellant could have been convicted without Ward's testimony. Also, Ward's testimony as to his conversation with appellant is partially uncorroborated, and, in view of appellant's claim that he supposed the packages contained diamonds, exactly what was said during the conversation was of great importance. Of course the trial judge did not have to swallow appellant's tale that appellant understood the packages contained diamonds. Appellant did not explain why it was necessary to use him as an intermediary to deliver

diamonds or why the deliveries of such a non-contraband item had to be done in this surreptitious manner so typical of narcotic transactions. In short, appellant's defense at trial strains credulity. Under these circumstances we cannot say that appellant made the required particularized showing of need for the grand jury minutes, and the court was justified in refusing to allow the defendant to see the minutes. Therefore, we affirm appellant's conviction on the first four counts as well as his conviction on counts five and six.

Although the disposition of this appeal does not require it, we think this is an appropriate time to reexamine this circuit's practice with reference to examination of grand jury minutes.

The Supreme Court in *Dennis* said of our practice of requiring as a matter of right an *in camera* inspection by the trial judge of grand jury minutes of the testimony of a witness called by the prosecution at trial:

> While this practice may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony—and we do not disapprove it for that purpose—it by no means disposes of the matter. Trial judges ought not to be burdened with the task or the responsbility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony. * * * Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate. The trial judge's function in this respect is limited to deciding whether a case has been made

---

1. Ward's reports, made the day after each transaction, and turned over to the defendant at trial pursuant to 18 U.S.C. § 3500, were entirely consistent with his trial testimony.

for production, and to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced. 384 U.S. at 874–875, 86 S.Ct. at 1851, 1852.

While this statement does not by any means condemn our current practice, it does indicate that that practice may be of limited usefulness. If a defendant, as in *Dennis*, can make a showing of a particularized need for the grand jury minutes he is entitled to examine them even if the court's *in camera* examination revealed nothing that could be of any conceivable value to the defense. Here, as we have pointed out, the appellant failed to demonstrate a need for an examination of Ward's grand jury testimony under the *Dennis* standard, and relying on that ground we approve the trial court's action in refusing to deliver the minutes of the defense. Therefore, the trial court's conclusion after its *in camera* inspection that the minutes contained nothing inconsistent with Ward's trial testimony, though true in fact, has become irrelevant under the *Dennis* standard.

While United States v. Procter & Gamble Co., supra, and Pittsburgh Plate Glass Co. v. United States, supra, hold that grand jury testimony need not be provided to the defendant unless he makes a showing of particularized need (and of course Dennis v. United States, supra, is not inconsistent therewith), we do not read these cases to limit the discretion of the trial court to order disclosure to the defendant under Fed.R.Crim.P. 6(e)[2] only when such a showing is made. These cases merely indicate a minimum standard to which the courts must adhere, and do not limit the court's power to order disclosure in additional situations where a showing of particularized need has not been made.

■ Furthermore, as the Court pointed out in *Dennis*, there has been a "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." 384 U.S. at 870, 86 S.Ct. at 1849. See Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228 (1964); Note, Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1051–1063 (1961). Although these references support the idea of general discovery in criminal proceedings we shall limit our consideration to the precise problem before us of whether grand jury minutes should be made available to a defendant for impeachment purposes after a witness has testified against him at his trial, disclosure being limited to that portion of the witness's grand jury testimony which was the subject of direct examination at the trial. Under these circumstances the traditional reasons for

---

2. Fed.R.Crim.P. 6(e) reads:

Rule 6. The Grand Jury.

\* \* \* \* \*

(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons.

grand jury secrecy are largely inapplicable [3] and we think that disclosure of grand jury testimony should be granted without requiring a showing of "particularized need" by the defendant. See Calkins, Grand Jury Secrecy, 63 Mich.L. Rev. 455 (1965); Sherry, Grand Jury Minutes: The Unreasonable Rule of Secrecy, 48 Va.L.Rev. 668 (1962).

■ For the foregoing reasons we direct that at trials commencing after our judgment here is entered, the district courts of this circuit at the request of the defendant should order that the defendant be allowed to examine the grand jury testimony of those witnesses who testify at his trial without requiring him to show any particularized need for this material; we are holding that a defendant should be entitled to see all the grand jury testimony of each witness on the subjects about which that witness testified at the defendant's trial. Never-

theless, despite this general rule, the Government, upon a showing that disclosure of particular material would jeopardize national security or should be denied for other proper reasons, may seek a protective order from the trial court in order to prevent disclosure to the defendant of that particular portion of the grand jury material. If the Government seeks such a protective order the court should first examine *in camera* the material sought to be protected before making its ruling; and if material is withheld from the defendant under such an order it shall be sealed by the court and preserved for consideration on appeal. But, we repeat, absent this unusual situation, a defendant as of right is entitled to examine the grand jury testimony of all witnesses at his trial on the subjects about which these witnesses testified at the trial.[4]

Affirmed.

3. The reasons usually given are:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there is no probability of guilt." United States v. Rose, 215 F.2d 617, 628–629 (3 Cir. 1954), quoted in United States v. Procter & Gamble Co., 356 U.S. 677, 681, n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

Of course when the defendant is on trial the first and fifth reasons have no application. Nor does the third reason, prevention of subornation of perjury, apply if the grand jury minutes are only released to the defendant after a witness has given his direct testimony at the

trial. The fourth reason, that of encouraging free disclosure by witnesses to the grand jury also has a limited validity, for persons testifying before grand juries usually are well aware that they are likely to be called upon to testify at a subsequent trial. As only the grand jury testimony of those who testify at the trial is given to the defendant, the Government can control access to grand jury minutes to some extent by its choice of witnesses at the trial. The remaining reason, that of insuring freedom of deliberation to the grand jury, is not seriously threatened by a disclosure of a trial witness's grand jury testimony to the defendant because a grand jury's freedom of deliberation depends not so much on the secrecy of the testimony before it as upon the secrecy of its deliberations and of its votes on indictments, and these are not revealed even to the Government, see Fed.R.Crim. P. 6(e), supra note 2.

4. It is our understanding that stenographic minutes of grand jury proceedings in our circuit are now regularly taken and filed away. However, this may not have always been the practice, and where it has not been we do not imply that a defendant is entitled as of right to minutes that do not exist.