**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Francis D. WHITE and Gertrude W. White, Defendants-Appellants.**

**Nos. 132, 133, Dockets 33446, 33447.**

United States Court of Appeals Second Circuit.

Argued Sept. 16, 1969.

Decided Oct. 10, 1969.

---

Charles K. Rice, Buffalo, N. Y. (Albert R. Mugel, Buffalo, N. Y., and J. F. Henry DeLange, Lockport, N. Y., on the brief), for defendants-appellants.

Richard B. Buhrman, Atty., Dept. of Justice, Washington, D. C. (Johnnie M.

Walters, Asst. Atty. Gen., Dept. of Justice, and Joseph M. Howard, Atty., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

I.

The primary point urged by appellants upon this appeal relates to the voluntariness with which they produced, during the investigation of their affairs by a Special Agent of the Internal Revenue Service Intelligence Division, the great bulk of the evidence used against them at trial. During the investigative sessions at which the incriminating evidence came out, appellants were not told that a possibility then existed of criminal prosecution for tax evasion. The Special Agent admonished Francis White (referred to as "Francis")[1] that he was not required to answer any questions or turn over any personal records, but did not state specifically that anything he said might be used against him ,in a criminal prosecution. He was not advised of his right to counsel, nor was he advised that counsel would be furnished him in the event he qualified as an indigent. Thus appellant argues that he was not given the full *Miranda* warnings at the point when investigation of his affairs became essentially accusatory, see Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and that his Fourth and Fifth Amendment rights were therefore abridged by the admission of evidence garnered through the investigative interviews.

The case presented by appellants does not differ in any essential from the situation confronting this Court in Unit-

ed States v. Mackiewicz, 401 F.2d 219 (2d Cir. 1968) and in United States v. Squeri, 398 F.2d 785 (2d Cir. 1968). In *Mackiewicz* we held that questioning by a Special Agent under circumstances almost identical to these here presented did not create an atmosphere sufficiently coercive to generate the necessity for the full range of warnings contemplated by the *Miranda* decision for essentially "custodial" interrogations. Francis was interviewed by the Special Agent at his own place of business, in the presence of his accountant, and was interviewed once more in the office of his accountant, who was again present throughout the interview. Under these circumstances, Francis's confrontations with the Service's Intelligence Division was not inherently coercive, and he and his wife were not entitled to suppress evidence against them garnered from that confrontation on the basis of *Miranda*. In accord with this view are decisions in seven other Circuits: Morgan v. United States, 377 F.2d 507 (1st Cir. 1967); United States v. Mancuso, 378 F.2d 612 (4th Cir. 1967); Agoranos v. United States, 409 F.2d 833 (5th Cir. 1969); United States v. Maius, 378 F.2d 716 (6th Cir. 1967); Cohen v. United States, 405 F.2d 34 (8th Cir. 1969); Feichtmeir v. United States, 389 F.2d 498 (9th Cir. 1968); and Hensley v. United States, 406 F.2d 481 (10th Cir. 1969). Contra, United States v. Dickerson, 413 F.2d 1111 (7th Cir., July 28, 1969).

Aside from the *Miranda*-based decisions, appellant asserts the novel proposition that the government's right to introduce evidence obtained from Francis is even more narrowly circumscribed by the requirements for voluntariness of "confessions" under 18 U.S.C. § 3501. That section lists five factors which a Judge should consider in his determina-

---

1. Both Francis and Gertrude White were convicted on the evidence produced in Agent Martin's investigation. The books, records and statements which appellants sought to suppress, however, were turned over to the investigator as a result of, and during, interviews with Francis alone.

Mrs. White does not claim any failure of consent or any right to suppress evidence against her based on failure of consent, since their joint returns, for which they are both liable, formed the basis of the prosecution.

tion of voluntariness before submission of the evidence to the jury. From this appellant argues that disclosures and evidence sufficiently voluntary to be admissible under *Miranda* nevertheless may be involuntary as a matter of law under the Omnibus Crime Control and Safe Streets Act of 1968.

■ That contention does not require extended discussion. It is sufficient to note that neither the language of § 3501 nor its legislative history indicate that Congress intended to expand the protection of potential criminal defendants beyond the scope of protection established by the *Miranda* line of cases.

## II.

Special Agent Martin, whose investigation in 1962 formed the basis of the prosecution against the Whites in this case, testified at trial concerning his investigation. Martin also had testified for the Government before the grand jury in 1965 but no record of his grand jury testimony was kept. However, minutes were kept and a record made of the testimony of all defense witnesses at the grand jury hearing.

Appellant argues, on authority of our decision in United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967), that a defendant in a criminal case is entitled to a transcript of all testimony against him given before the grand jury. We noted in *Youngblood* that transcripts of testimony at grand jury hearings in this Circuit are now regularly kept and filed away, but that this "may not always have been the practice, and where it has not been we do not imply that a defendant is entitled as of right to minutes that do not exist." 379 F.2d at 370, fn. 4.

■ Had this failure occurred subsequent to our decision in *Youngblood,* *supra,* very possibly a different question would have been presented. However, *Youngblood* was given prospective application only, and the indictment against the Whites was returned two years prior to that decision. Minutes of Agent Martin's testimony were not made at the grand jury hearing in 1965. Since they did not exist at the date of decision in *Youngblood,* his trial testimony cannot now be held improperly admitted on that basis.

## III.

The Government adduced evidence at trial showing that Francis maintained a separate personal bank account in a neighboring town in which he deposited large amounts of currency from unidentified sources. The evidence was offered to show the wilfulness of his conduct in seeking to conceal his financial activities or mislead others who had an interest in his financial affairs. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943). White's accountant, who prepared his tax returns, was unaware of the separate account and the large cash deposits. Appellant contends that this evidence was prejudicial and improperly admitted, suggesting that the jury may have erroneously inferred that these cash deposits represented still other unreported income, unrelated to the specific items upon which the evasion indictments were based.

■■ In cases involving income tax evasion, evidence purporting to show the wilfulness of misconduct through extensive dealings in cash is properly admissible. E. g., Gariepy v. United States, 189 F.2d 459, 463 (6th Cir. 1951); Schuermann v. United States, 174 F.2d 397, 398 (8th Cir. 1949). The Government's proof showed that a large number of checks were cashed by the Whites throughout the period covered by the indictment instead of being deposited to the proper business accounts. Cash deposits in the separate bank account thus had a substantial tendency to prove their intent in converting unreported income received in check form into cash. The value of this evidence as proof of a material element in the case overcame whatever prejudice might have operated against appellants through improper inferences made by the jury on the evidence, and the evidence was therefore properly admitted.

## IV.

Several items charged in the indictment as unreported income were in the form of checks from a corporation controlled by Francis. The Government introduced evidence that those payments were entered on the paying corporation's books as expense items. This evidence was offered for the purpose of showing that the payments were not repayments of loans or other items which would not represent reportable income to the Whites. Appellants argue that this evidence was improperly admitted because it may have raised the inference of misdealing by the corporations, which was not charged in the indictment. However, as was the case with the cash deposits, any prejudicial inference was overbalanced by the positive value of the evidence in showing a material element of the case; i. e., the income nature of the Whites' receipts, and its admission was not reversible error.

## V.

The indictment brought by the Government against the Whites charged each defendant with (a) four counts (for the years 1958, 1959, 1960, 1961) of wilful attempts to evade or defeat income taxation under 26 U.S.C. § 7201, and (b) four separate counts (for the same years) under 26 U.S.C. § 7206(1) for making and subscribing documents which contain "a written declaration that it is made under the penalties of perjury, and which he [the taxpayer] does not believe to be true and correct as to every material matter." The documents were signed joint tax returns for the four years of the indictment period. The prosecutions under § 7201 were based on understatements of income and overstatements of expenses in the four-year series of filed returns, together with proof of overt acts by both defendants tending to show the wilfulness of their affirmative efforts to evade the tax.

The jury returned a verdict of guilty on all eight counts against each defendant. Each was subsequently sentenced to the maximum fine of $10,000 for each violation of § 7201, totaling $40,000. Each was additionally sentenced to the maximum fine of $5,000 for each violation of § 7206(1), which provides a felony penalty for perjured returns whether or not a wilful attempt to evade or defeat payment of taxes is shown. Total fines under this section were $20,000 for each defendant. We affirm the convictions on all counts, but the additional fines for violation of § 7206(1) must be vacated. United States v. Lodwick, 410 F.2d 1202, 23 AFTR2d 69–1760 (8th Cir., May 22, 1969); Gaunt v. United States, 184 F.2d 284, 290 (1st Cir. 1950), cert. denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662, rehearing denied 340 U.S. 939, 71 S.Ct. 488, 95 L.Ed. 678 (1951). Under the circumstances of this case, the perjured returns were "incidental step[s] in the consummation of the completed offense of attempted defeat or evasion of tax," *Gaunt, supra* at 290, and as such each offense constituted a "crime within a crime" under the lesser included offense doctrine. *Id.* Both offenses charged were properly submitted simultaneously to the jury, but the cumulative fines, insofar as they exceeded the maximum possible fine under the greater offense charged in § 7201, constituted an unauthorized pyramiding of penalties.

Section 7206(1), although it charges an offense separate and distinct in itself, is only one part in a comprehensive statutory scheme to prohibit and punish fraud occurring in the assessment and collection of taxes by the government. Section 7201 is the inclusive section, prohibiting all attempts to evade or defeat any tax *in any manner,* and such an attempt is punishable as a felony. There follows a series of sections prohibiting specific methods of fraud in the collection and payment of taxes, all of which are separately punishable standing alone. Among these are §§ 7203, 7206 and 7207, all directed against the taxpayer. Other sections are directed at persons involved in the process of tax collection. Section 7203 prohibits

the failure to file a return, supply information or pay a tax. Section 7207 prohibits the filing of fraudulent returns, statements or other documents required by the Service. Both these sections have been held by the Supreme Court to constitute, under appropriate circumstances, lesser offenses included within the prohibition of § 7201. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Section 7206(1) provides penalties for signing, under oath, false returns or statements made in the process of tax collection. The offense charged is perjury, the operative element is the signature under oath, and the felony penalties reflect the seriousness of this method of committing fraud. Thus the perjury offenses charged under § 7206 may separately form the basis for an indictment; but where proof of wilfully attempted evasion under § 7201 also proves, as an incident to the wilful evasion, the preparing and subscribing of a fraudulent return, the specific form of fraudulent conduct merges into the inclusive fraud charged under § 7201. To cumulate penalties beyond the maximum authorized by § 7201 is, therefore, improper under these circumstances, and the $20,000 in additional fines assessed against each appellant on the § 7206(1) counts must be vacated.

### VI.

The sentencing court suspended the additional sanction of imprisonment against the Whites, placing them both on probation for five years. Continuation of probation was expressly conditioned, however, upon their payment, within 30 days, of all existing tax liabilities together with full interest and all penalties, including the fraud penalties.

In imposing these conditions, the trial court referred to information it had received from the Internal Revenue Service assessing appellants' civil liability for the four years covered by the indictment. However, that figure represented only a computation by the Service, and

the Government concedes that the appellants here are entitled to litigate that civil liability before payment. It is further conceded that the conditions imposed on appellants' probation would hamper the determination by legal process of the civil liability. For these reasons, the conditions attached to probation must be removed. United States v. Taylor, 305 F.2d 183, 97 A.L.R.2d 791 (4th Cir.) cert. denied 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126, rehearing denied 371 U.S. 943, 83 S.Ct. 322, 9 L.Ed.2d 277 (1962); United States v. Stoehr, 196 F.2d 276, 33 A.L.R.2d 836 (3d Cir.) cert. denied 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643 (1952).

The judgment of the District Court is modified by striking therefrom the $40,000 in fines applicable to the convictions under 26 U.S.C. § 7206(1), and is remanded for removal of the conditions to probation; in all other respects, the judgment is affirmed.