Commonwealth, Appellant, *v.* McLaughlin.

Argued June 14, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Steven H. Goldblatt,* Assistant District Attorney, with him *Esther R. Sylvester* and *Deborah E. Glass,* Assistant District Attorneys, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*John Rogers Carroll,* with him *Robert E. Gabriel,* for appellee.

OPINION BY CERCONE, J., December 11, 1974:

Appellee, Patrick McLaughlin, worked under contract with the City of Philadelphia as a lobbyist in Washington, D. C. The contract specified a yearly salary of $20,000 plus expenses not to exceed $5,000. Pursuant to this arrangement, appellee submitted expense vouchers to the City for reimbursement. These vouchers were reviewed and, if deemed proper, paid by the City Controller's Office.

In his capacity as first Deputy Controller, Gilbert Stein, initiated an investigation into certain allegedly false expense statements that had been submitted to the City by appellee in 1971. As a result of this investigation, a report was prepared and submitted to the City Controller. This report summarized Mr. Stein's investigation activities and detailed his belief that certain expense statements and vouchers submitted by Mr. McLaughlin were false. The report recommended that Mr. McLaughlin be "subpoenaed" and questioned under oath "to get an explanation, if any, for all findings," and "unless satisfactorily explained, [to] turn the findings over to District Attorney with a recommendation for prosecution."

Subsequently, appellee was subpoenaed by the City Controller, pursuant to the subpoena power granted to the Controller under the City Charter. This administrative subpoena, so called, in fact carried little clout. The only penalty provided for non-appearance was disallowance of submitted expenses for reimbursement by the city. Insofar as the Controller's Office was concerned, a failure to appear under subpoena constituted a failure of a condition precedent to the contractor's right to receive reimbursement for expenditures made in furtherance of the city's business. Thus, when McLaughlin was subpoenaed to appear and explain the allegedly falsified vouchers, he could have ignored the request and suffered only the loss of bona fide expenditures made on the city's behalf.[1]

McLaughlin appeared, however, and answered questions put to him by Mr. Stein and recorded by a

---

[1] McLaughlin, however, did find himself in a particularly uncomfortable position. Previously, McLaughlin's expenditures had been publicly challenged by Mr. Stein's predecessor, Mr. Hemphill. In reply, McLaughlin issued a stinging three-page press release blasting Hemphill for not having called McLaughlin in for an explanation prior to the public disclosure.

stenographer. His attempted explanation was both ambiguous and contradictory and, therefore, wholly unsatisfactory. Thereafter the entire matter was referred to the District Attorney's office which initiated prosecution. A preliminary hearing was held following which McLaughlin was indicted for numerous offenses of fraud against the City of Philadelphia.

McLaughlin subsequently filed a motion with the Philadelphia County Court of Common Pleas to suppress his statements made to Mr. Stein because Mr. Stein had not provided *Miranda* warnings. Following a hearing and submission of briefs, this motion was granted. In granting the motion, the trial judge found that appellee did not "knowingly and willingly waive his constitutional rights." The Commonwealth appeals from this decision.[2]

The Commonwealth urges that the lower court erred in suppressing McLaughlin's statements because Mr. Stein did not give him *Miranda* warnings prior to interrogating him. In its well-written brief the Commonwealth refers us to an impressive array of federal cases which have held, with the exception of the Seventh Circuit,[3] that under similar circumstances *Miranda* warnings were not required.

In *United States v. Jaskiewicz*,[4] for example, the Third Circuit confronted a situation where a known,

---

[2] This appeal was formerly before this court, but was quashed on the grounds that the Commonwealth had not shown a sufficient need for the statements which were suppressed. 228 Pa. Superior Ct. 723 (1973). The Supreme Court, however, reversed and remanded the appeal to us for our consideration on the merits.

[3] See *United States v. Dickerson*, 413 F.2d 1111 (7th Cir. 1969). That decision, however, has been explicitly rejected in at least nine of the remaining circuits. See note 5 infra.

[4] 433 F.2d 415 (3d Cir. 1970), *cert. denied* 400 U.S. 1021. See also *United States v. Robson*, 477 F.2d 13 (9th Cir. 1973); *United States v. Schmidt*, 471 F.2d 385 (3d Cir. 1972).

professional gambler raised the *Miranda* issue with regard to interrogations by the Internal Revenue Service. In particular, the appellant therein argued that he was entitled to *Miranda* warnings once he had become the focus of a criminal investigation. In holding that *Miranda* warnings were not required, the Third Circuit stated: "The issue is not whether or not the Fifth Amendment applies in a non-custodial setting. It is whether or not the affirmative duties imposed upon governmental agencies by *Miranda* arise by virtue of the defendant's being a potential target of an indictment, or arise by virtue of the fact that a governmental agency has in some meaningful way subjected him to physical, or perhaps psychological, restraint.

"Undoubtedly there is some degree of compulsion upon a taxpayer to cooperate with the Internal Revenue Service merely from the fact that civil remedies exist for the enforcement and collection of taxes. Undoubtedly that psychological compulsion increases somewhat when a taxpayer is made aware of possible criminal sanctions. But the compulsion to attempt to avoid criminal sanctions by testimony is not such as to violate the Fifth Amendment . . . and in any event the standards for weighing such non-custodial compulsions are not those of *Miranda*. Rather, they are those discussed in United States v. Kordel, 397 U.S. 1, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970), and De Vita v. Sills, 422 F.2d 1172 (3d Cir. 1970).

"In short, [*Miranda*] does not require that this court in this case depart from its pre-*Miranda* rule that the sole test for admissibility of a taxpayer's statements to agents of the Treasury Department is the voluntariness of the statements. United States v. Frank, 245 F.2d 284 (3d Cir.), cert. denied, 355 U.S. 819, 78 S. Ct. 25, 2 L. Ed. 2d 35 (1957); United States v. Burdick, 214 F.2d 768, 773 (3d Cir. 1954), cert. denied, 350

U.S. 831, 76 S. Ct. 65, 100 L. Ed. 742 (1955)." *Id.* at 419-20.

Thus, in nine of the federal circuit courts,[5] the mere fact that a criminal investigation has focused on an individual does not require that the interrogating government officials give him *Miranda* warnings. In those circuits the policy underlying that conclusion is eminently clear: "We cannot agree that every administrative official who confronts a citizen with a request for information that might disclose criminal conduct, thereby exerts a compulsion on the citizen that must be dispelled by the *Miranda* placebo. In today's vast and complex network of widespread daily administrative contacts between citizens and government officials, such a holding would open a veritable Pandora's box." *United States v. Prudden*, 424 F.2d at 1028. Furthermore, the courts' conclusions are not altered by the fact that the inquiry was part of an investigation which "was one with dominant criminal overtones. . . ." *United States v. Prudden*, 424 F.2d at 1031. Thus, the general rule is that interrogations by federal officers do not require the provision of *Miranda* warnings, absent custody or some other form of compulsion.[6] This rule obtains even though the interrogation

---

[5] Other Circuits reached the same conclusion in the following cases: *Taglianetti v. United States*, 398 F.2d 558 (1st Cir. 1969); *United States v. White*, 417 F.2d 89 (2d Cir. 1969); *United States v. Bagdasian*, 398 F.2d 971 (4th Cir. 1968); *United States v. Prudden*, 424 F.2d 1021 (5th Cir. 1970); *United States v. Maius*, 378 F.2d 716 (6th Cir. 1967); *United States v. Brevik*, 422 F.2d 449 (8th Cir. 1970); *United States v. Chikata*, 427 F.2d 385 (9th Cir. 1970); *Hensley v. United States*, 406 F.2d 481 (10th Cir. 1969). In the above cases, certiorari was denied by the Supreme Court.

[6] *Mathis v. United States*, 391 U.S. 1 (1968), did require that an IRS agent provide *Miranda* warnings to a suspected tax evader. However, at the time of the interrogation the suspect was in prison on another offense. Hence, as the Supreme Court held, the element of custody was indisputably present.

was conducted at the offices of a government agent after the accused became the focus of a criminal investigation. See Annotation, 31 A.L.R.3d 565 (1970).

If this were the law in Pennsylvania, at this point we would now turn to the facts of the instant case and determine whether the necessary incidents of custody or coercion were present in Stein's interrogation of McLaughlin.[7] However, the Supreme Court of Pennsylvania has not read *Miranda* to require a *custodial* interrogation as a condition precedent to its application. Instead in *Commonwealth v. Feldman,* 432 Pa. 428, 432 (1968), Justice ROBERTS stated in an opinion joined by two other justices[8] that: "From reading *Escobedo* and *Miranda* together it becomes clear that whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in *Miranda."* Because of the equal division of the participating justices concerning the proper *ratio decidendi* in *Feldman,* doubt existed concerning the vitality of the rationale propounded by Justice ROBERTS. This doubt cleared when the Court next had the opportunity to consider whether *Miranda* appertains to non-custodial interrogations. In *Commonwealth v. D'Nicuola,* 448 Pa. 54 (1972), the Court considered the admissibility of statements made by a suspect while he was hospitalized after an apparent suicide attempt. Therein, the Court

---

[7] See *United States v. Gower,* 271 F. Supp. 655 (D. Pa. 1967), where similar circumstances led the District Court to find a custodial interrogation. However, in the instant case McLaughlin had been dealing with the Controller's Office for thirteen years, and had previously demanded the opportunity to explain discrepancies. These facts serve to limit the coercive nature of the interrogation in the instant case.

[8] Three justices concurred in the result and one justice did not participate.

stated, per Justice Nix: "When previously confronted with this issue of whether a 'custodial interrogation' had taken place, we conclusively established that 'whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in *Miranda.*" *Id.* at 57. See also *Commonwealth v. Yount,* 455 Pa. 303, 308 (1974). Although the Court did not decide in *D'Nicuola* that the hospital interrogation was non-custodial, its determination that questioning took place without *Miranda* warnings after a criminal investigation had focused on the accused, rendered unnecessary any conclusion concerning the custodial nature of the interrogation.

Hence, under the law espoused by the Supreme Court of this Commonwealth, there need be no *custodial* interrogation so long as the interrogation takes place adjunctive to a criminal investigation of which the accused is the focus.[9]

---

[9] The difference in interpretations between the Third Circuit and our Supreme Court concerning the necessary or sufficient conditions which compel *Miranda* warnings may present a problem in light of our Supreme Court's decision in *Commonwealth v. Negri,* 419 Pa. 117 (1965). Therein the Court determined to follow the decisions of the Third Circuit on matters relating to the federal constitution when a particular constitutional problem is susceptible to varying interpretations and conclusions, and the United States Supreme Court has not spoken to the issue or has consistently refused certiorari. As the cited cases above indicate, such a problem exists with respect to providing *Miranda* warnings at a non-police interrogation in a non-custodial setting. Since our Supreme Court was doubtless aware of its difference with the Third Circuit, at least by the time it rendered its decision in *Commonwealth v. D'Nicuola,* supra, we conclude that the interpretation of *Escobedo* and *Miranda* first espoused in *Commonwealth v. Feldman,* supra, probably rested on the Supreme Court's supervisory powers, despite the otherwise apparent federal constitutional grounds. See *Com-*

Since the investigation clearly had focused on Mc-Laughlin, we turn to the question of whether the interrogation of McLaughlin herein was part of a *criminal* investigation. First, it is certainly true that the City Controller's Office is not a branch of the government ordinarily engaged in investigating criminal conduct. However, the policy of the Controller's Office did require that, in a proper case, evidence that it gathered which indicated that the city had been victimized by criminal acts should be turned over to the District Attorney's office for prosecution. In fact, prior to becoming Deputy Controller, Mr. Stein had worked in the District Attorney's office. Combined with Mr. Stein's stated intention of recommending prosecution by the District Attorney's office unless McLaughlin somehow satisfactorily explained the inconsistencies in his vouchers, the facts compel the conclusion that McLaughlin was the focus of at least an incipient criminal investigation. As the United States Supreme Court stated in the *Mathis Case,* supra note 6: "It is true that a 'routine tax investigation' may be initiated for the purpose of a civil action rather than criminal prosecution. To this extent tax investigations differ from investigations of murder, robbery, and other crimes. But tax investigations frequently lead to criminal prosecutions, just as the one here did. In fact, the last visit of the revenue agent to the jail to question petitioner took place only eight days before the full-fledged criminal investigation concededly began. And as the investigating revenue agent was compelled to admit, there was always the possibility during his investigation that his work would end up in a criminal prosecution. We reject the contention that tax investigations are immune from the *Miranda*

---

*monwealth v. Campana,* 452 Pa. 233 (1973), *remanded* 414 U.S. 808, *explained* 455 Pa. 622 (1974).

138

requirements for warnings to be given a person in custody." 391 U.S. at 4. Therefore, even though an investigation begins with only the potential to develop into a criminal prosecution, and is conducted by agents not directly involved in criminal prosecutions, *Miranda* warnings may be required.[10]

The extensive questioning of McLaughlin by Mr. Stein was certainly police conduct, insofar as it was indisputably likely to evoke admissions which would be included with the other evidence against McLaughlin when it was delivered to the District Attorney's office. It was, therefore, an interrogation of McLaughlin as part of a criminal investigation of which he was the focus despite the fact that it was conducted by a government agency not ordinarily involved in criminal investigations. The questioning therefore fell within the purview of *Miranda* and *Escobedo* as they have been interpreted by our Supreme Court.[11]

The conclusion we reach will not negatively affect the Controller's Office in performing their duty of ferreting out falsified expense vouchers. Nor do we see that the Controller's Office will be required to give *Miranda* warnings in the vast majority of their investigations. Indeed, so long as they only use statements so taken to determine the propriety of paying particular, claimed expenses, no warnings need be given. The warnings are only necessary when the statements are to be offered in a criminal prosecution of a city

[10] In *Commonwealth v. Simala*, 434 Pa. 219 (1969), our Supreme Court found that a mayor's interrogation of a youth constituted "police conduct" so that *Miranda* warnings were required to be given.

[11] Since we conclude that the instant interrogation ran afoul of *Miranda*, we need not reach the Commonwealth's contention that the lower court erred in applying *Garrity v. New Jersey*, 385 U.S. 493 (1967) to the instant facts in finding McLaughlin's statements to be involuntary, also.

contractor or employee—a task not within the ambit of the City Controller's duties.[12]

Order affirmed.

JACOBS, J., dissents.

---

[12] We note that the Internal Revenue Service, despite the favorable rulings referred to above, now requires its agents to provide people with *Miranda*-type warnings prior to interrogating them about their tax returns. See *United States v. Jaskiewicz*, 433 F.2d at 420, n. 10.

---

DISSENTING OPINION BY PRICE, J.:

I agree with the majority opinion in all but its conclusion that this investigation is a part of a *criminal* investigation. Since I would conclude the investigation here discussed to be *non-criminal* in its scope and purpose, I would not require the *Miranda* warnings.

Accordingly, I would reverse the order of the lower court.