**UNITED STATES of America**

**v.**

**T. Vincent QUINN, Martin Schwaeber and James D. Saver.**

United States District Court
S. D. New York.
April 25, 1956.

See also 17 F.R.D. 342.

Paul W. Williams, U. S. Atty., by Clement J. Halliman, Jr. Asst. U. S. Atty., New York City, and Henry Formon, Asst. U. S. Atty., Ridgefield, N. J., for the United States.

Boris Kostelanetz, New York City, for defendant Quinn.

Jeremiah F. Cross, New York City, for defendant Saver.

Myron J. Greene, New York City, for defendant Schwaeber.

WEINFELD, District Judge. (Delivered orally from the Bench.)

The defendants move for a judgment of acquittal at the close of the Government's case of the various counts contained in two separate indictments which have been consolidated and tried together. The motion is made pursuant to Rule 29 of the Federal Rules of Criminal Procedure on the ground the evidence is insufficient to sustain a conviction of offenses charged.

The indictment charges the defendant Quinn who was a member of Congress from January 1, 1949 to December 31, 1951, as a principal with violation of Section 281 of Title 18, and also charges the defendants Schwaeber and Saver, who were his partners in the practice of law at various times, with aiding and abetting in the commission of the offense. Section 281 in substances makes it illegal for a member of Congress to receive or agree to receive compensation for services rendered or to be rendered in any matter before a Federal department or bureau in which the Government is interested, whether he personally or another performs the services.

In this case the charge is the receipt of compensation. The broad objective of the Act is to secure the integrity of executive action against undue influence of members of Congress upon executive officers and to insure efficiency in the conduct of public affairs. It was felt that the absence of pecuniary gain to members of Congress would reduce or eliminate any undue influence upon executive officers or employees in those matters where they appeared before such executive officials.[1]

The issue presented in this case is novel, as Government counsel concede, in that it is the first prosecution under that statute where admittedly the defendant Quinn as a member of Congress did not personally appear nor render services before the Bureau of Internal Revenue, the Bureau involved, on behalf of any taxpayer or in any proceeding, with but one single exception, to which I shall make reference. All the services before the Bureau were rendered by either Quinn's law partners, co-defendants Schwaeber or Saver, or associates of the firm. It is acknowledged that none

---

1. Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057.

of the clients have retained him, met him or in general that he had any contact with them. However, this circumstance in and of itself is no bar to a prosecution, providing that the Government establishes prima facie the essential elements of the offense sufficient to send the case to the jury.

Section 281 of Title 18 of the United States Code, in so far as applicable, provides:

"Whoever, being a Member of * * * Congress * * * directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

Count 1 of the indictment charges as follows:

"Commencing on or about the first day of January, 1949, and continuing thereafter until about the 31st day of December, 1951, and at the several times of committing the offenses hereafter set forth in this indictment, T. Vincent Quinn was a member of the House of Representatives of the Congress of the United States of America, being representative of the Fifth Congressional District of New York, and also, at the several times of committing the offenses hereafter set forth in this indictment, was engaged as equal copartner in the practice of law in partnerships with Martin Schwaeber and James D. Saver, at times using the law firm name of Schwaeber, Quinn and Saver, and at other times using the law firm name of Quinn and Saver, but at all times herein maintaining a bank account at the Bank of the Manhattan Company, 40 Wall Street, New York, New York, in the name of Schwaeber, Quinn and Saver, and after March 12, 1951, maintaining a bank account at the Chase National Bank, 60 East 42nd Street, New York, New York, in the name of Quinn and Saver.

"(2) During the period of time from about January 1950, until about December, 1951, there was under investigation and consideration by the Bureau of Internal Revenue of the United States Treasury Department a certain matter consisting of a controversy, charge, accusation and proceeding relating to income taxes due and payable on the income of Daniel D. Zell and Sophie B. Zell, for the year 1945, to which matter the United States was a party and in which it was directly and indirectly interested.

"(3) At New York, New York, in the Southern District of New York, and on or about July 12, 1950, T. Vincent Quinn, herein named a defendant, being duly elected a member of Congress and after his election and during his continuance in office, acting jointly and in concert with James D. Saver, also herein named a defendant, said defendant James D. Saver aiding, abetting, counseling, inducing and procuring said defendant T. Vincent Quinn so to act, unlawfully did receive, directly and indirectly from Sophie B. Zell, compensation for services rendered and to be rendered by him, the said T. Vincent Quinn, and others, to wit, members of the law firm of Quinn and Saver and employees and associates of said law firm, in relation to the aforesaid matter, in which the United States was a party and was directly and indirectly interested, before the Bureau of Internal Revenue of the United States Treasury Department, said defend-

ants well knowing that the United States was a party to said matter and was directly and indirectly interested therein, to wit, compensation in the sum of seven thousand five hundred dollars ($7,500.00) by means of a certain check [and then the check is described] to the order of James D. Saver, which check was endorsed by said James D. Saver for deposit to the account of Schwaeber, Quinn and Saver and was deposited on or about July 11, 1950, by the said T. Vincent Quinn and James D. Saver in said law firm account of Schwaeber, Quinn and Saver, in the Bank of the Manhattan Company, 40 Wall Street, New York, New York, and on or about July 12, 1950, final payment of said check in the sum of seven thousand five hundred dollars ($7,500.00) was received by said T. Vincent Quinn and James D. Saver from the Chase National Bank at New York, New York, in the Southern Judicial District of New York and within the jurisdiction of this court, from the funds of said Sophie B. Zell, there and then on deposit, said compensation being received in return for services rendered and to be rendered by members of the law firm of Quinn and Saver, and associates and employees of said law firm, said services consisting of obtaining information pertaining to said income tax matter from officers and employees of the Bureau of Internal Revenue of the Treasury Department, and other officers and employees of the United States, as well as interceding and conferring with said officers and employees, presenting arguments, assertions and allegations, and otherwise acting on behalf of Daniel D. Zell and Sophie B. Zell, to influence and persuade the aforesaid officers and employees in order to obtain favorable decisions and actions in and upon such controversy, charge, accusation and proceeding." ... . ..

This first count of the second indictment is the only one in which the defendant Schwaeber is not also named as a defendant, as an aider and abettor.

The remaining counts of the indictments are all of similar import, except the alleged violation is charged with respect to different matters and on different dates.

The key problem on this motion is what are the essential elements which the Government must establish and whether there is sufficient evidence from which a reasonable person might conclude that the essential elements have been established.

■ I hold that under the statute, and the indictment as drawn in this case, the essential elements which the prosecution must establish are:

(1) that the defendant Quinn was a member of Congress at the times referred to in the indictment. It is conceded that he was such a member of Congress from January 1, 1949 to December 31, 1951.

(2) that the defendant Quinn received, directly or indirectly, compensation derived from one or more of the matters specified in the indictment.

(3) that the compensation was for services rendered either by him or another, in this case by either or both of the other defendants Schwaeber and Saver, or one of their associates in a matter before the Bureau of Internal Revenue in which the Government was an interested party.

Again it is conceded by the defendants that the Government was an interested party in each of the matters referred to in the indictment and as to which testimony was given upon the trial.

(4) that Quinn knowingly accepted the compensation for the services which he knew had been rendered in matters before the Internal Revenue Bureau during the period he was a member of Congress.

(5) that the compensation was received in return for services rendered for

the purpose of interceding with, or with the intent to influence and persuade, officers and employees of the Internal Revenue Bureau to obtain favorable decisions and actions in matters pending before the Bureau.

It is not necessary to consider all the elements I have outlined. It readily occurs that a prime, if not the crucial, issue—since Quinn never met the clients, was not retained by them and did not personally appear or render any services before the representatives of the Bureau—is whether he received the compensation with knowledge that it was for services rendered by one or more of his partners before the Bureau while he was a member of Congress.

▮ In other words, was his conduct in receiving the compensation wilful— which in this case I hold to mean knowingly, deliberately and intentionally, as distinguished from accidentally or negligently. In my view it is not necessary, as the defendants contend, to find a specific criminal intent—a conscious purpose of wrongdoing, or evil motive—but nonetheless knowledge there must be that Quinn did in fact know that the compensation received by him was for services rendered before the Internal Revenue Bureau and that he also knew that such payment was for services rendered during the period he was a member of Congress, and, fully aware of these facts, he knowingly, deliberately and intentionally received such compensation.

Is there any competent evidence on which to go to the jury on this element, or putting it in the language used in this Circuit, is there "evidence from which a reasonable person might conclude that the charge in an indictment was proved",* so that the jury must decide the issue?

It is admitted that no direct evidence of knowledge such as admissions by the defendant, statements made to others or writings or documentary proof has been offered. It is recognized that this type of proof on the issue of knowledge is unusual. Reliance here is placed upon facts and circumstances from which it is contended that the reasonable inference is warranted that the defendant had actual knowledge.

But in either case, whether proof be direct, or by circumstances, or by inference from circumstances, the proof must be of a character as to satisfy beyond a reasonable doubt that the defendant did in fact have knowledge. It should be pointed out that it is not sufficient to find that as a reasonable person Quinn should have known the facts. What must be determined is whether there is sufficient evidence upon which the jury would be warranted in finding that in fact he had actual knowledge.

▮ That the defendants were partners or that services were rendered by one or the other of the partners or associates does not establish that Quinn knew of the receipt of the fees or that they were derived from services rendered in matters before the Bureau during his incumbency.

▮ While partners may act for one another in civil matters this is not true so far as criminal liability is concerned, which is personal. In criminal cases a partner is not chargeable with acts of his co-partners unless he has knowledge.

▮ Let us turn to the evidence upon which the Government urges that a permissible inference of knowledge may be charged to Quinn so as to send the case to the jury.

The partnership of Schwaeber, Quinn & Saver was embarked upon in August, 1948 when Quinn had not yet been nominated for member of Congress. This firm succeeded Schwaeber & Saver. Each partner had a drawing account of $200 per week against profits. Within a short time Quinn was nominated for member of the House of Representatives and was actively engaged in his campaign from September 1948 until his election early in November, following which he took a vacation until he assumed the duties of his public office on January 1, 1949.

* United States v. Feinberg, 2 Cir., 140 F.2d 592, 594.

Up to this point he rendered little if any service to his law firm.

Following the assumption of his duties, the Government's evidence establishes, that as little as he gave of his time and services to the firm up to December, 1948, he devoted even less time thereafter.

He appeared at the firm's office on Fridays in some weeks for about an hour or two, where he then took care of his public functions, such as writing letters for, and seeing, his constituents. In other weeks he was not at the office at all. There is no suggestion—indeed not a scintilla of evidence—that he took any part, direct or indirect, in his firm's work.

The Government proof, in the words of the witness called to establish his activity to show knowledge, "is that he did nothing", and at another point this witness testified "He performed no services during the period in which he was in Congress".

It would be stating the fact to say that his relationship to his law partnership was that of an absentee partner.

There is no evidence that he ever conferred with other members of the firm as to matters, source of income, or that he was ever advised as to the matters from which fees were derived. A number of these matters antedate his membership in the firm, some by as much as almost two years, and in a number of others substantial services were rendered before he became a member of Congress. In still other cases much of the work was carried on by Schwaeber when he was no longer a member of the firm, commencing in February, 1951, and when there was no professional relationship between him and Quinn.

There is no basis upon which to find that Quinn knew or was informed of these services when Schwaeber was no longer his partner.

The Government relies upon the fact that in his individual income tax returns for the years 1949, 1950 and 1951, Quinn listed income from the law firms. But there is no proof of any breakdown to show that the income came from any of the matters pending before the Bureau which are the subject of the indictment, and the fact that the bulk of the firm's business concerned tax matters in so-called intelligence items before the Bureau is not sufficient, absent other proof, to bring home knowledge to him as to the source of compensation and that it was related to matters in which his partners appeared before the Bureau.

The analysis of fees as submitted by Buratt (Internal Revenue Agent) was simply a tabulation constructed from the entries in the checkbook and was a crediting of fees in particular matters, as they should have been credited for distribution according to the partnership arrangement, but made long after the event.

So far as this record goes, fees were entered in the stub of the checkbook which was used to arrive at the profit and loss statement. Nothing has been presented to warrant the inference that the defendant Quinn who rarely put in a visit at the firm's offices ever saw the checkbook, which, incidentally, listed the name of the client from whom the fee was received without specifying the matter. Indeed, there is direct testimony offered by the Government that the books and work papers were never shown to Quinn.

Finally, the evidence is uncontroverted that for a period of six months, from April to September, 1950, when some of the services in one or more of the matters were rendered, or, I believe, some of the fees were paid, Quinn was completely removed from any form of activity, Congressional or otherwise, due to a severe heart attack.

The Government suggests that in one matter out of the 14 specified in the indictment Quinn telephoned an Internal Revenue agent. In this matter Quinn had appeared before the Department of Justice in 1948, prior to his election as a Congressman. It had been pending since 1947, before he was a member of the law firm. In October, 1948, before

his election, the Department of Justice, to which the matter had been referred by the Internal Revenue Bureau, declined prosecution.

■ In January, 1949, Quinn inquired of the regional counsel of the status and made similar inquiries on two occasions, one in February and the other in March. These calls were solely, as the witness readily acknowledged, to inquire of the status of the matter; the merits of the case were not discussed. I cannot agree with the Government contention that this was the rendition of services of the nature contemplated under the statute.

The only other alleged services claimed in this particular matter are telephone calls to the defendant Schwaeber by another agent of the Bureau assigned to make a supplemental investigation, who requested Schwaeber to supply documentation of the taxpayer's contention raised before the Department of Justice to which Schwaeber's sole response was a letter that he had nothing to add to the case.

In this instance there was no proof that the services were rendered within the contemplation of the statute before the Bureau either by Quinn or his partner, but, more important, there is no proof that he knew of the payment of the fee which occurred in January, 1950, and which, as all fees, went into the common fund.

So much on the issue of knowledge.

Finally, there is not a scintilla of evidence to support the allegation of the indictment that the compensation was for services, which also included "interceding" with officers and employees of the Bureau of Internal Revenue and "otherwise acting * * * to influence and persuade [them] * * * in order to obtain favorable decisions and actions * * * ." There was no proof of any attempt by Quinn, directly or indirectly, or by his partners in any single respect, to support the allegation of "in-

terceding" and "influencing" the judgment of the officers of the Bureau.

■ The Government concedes as much but contends this is not an element of the offense. However, it has made that very specific charge in the indictment in this case and so it is unnecessary to consider in the abstract whether, absent such allegation, an element of the offense is a purpose to "intercede" and to "influence". The leading case of Burton v. United States,[2] as well as others, touch upon this as an element of the offense. It should be pointed out that although Count 7 in the Burton case which charged the receipt of compensation did not contain an allegation of a purpose to influence (as distinguished from Count 6 which charged an agreement to receive compensation and a specific purpose of influence), nonetheless the Supreme Court quoted with approval the judge's charge [3] under Count 7 which required the jury to find influence as an element.

In sum, the Government has failed in its case in chief to submit evidence, either direct or indirect, upon which the essential element of knowledge could be found—this apart from its admitted failure to establish that Quinn, either directly or indirectly, sought to intercede and to influence Internal Revenue officers in order to obtain favorable decisions and actions.

I hold there is no basis upon which a jury could reasonably, upon the evidence presented, draw an inference to establish beyond a reasonable doubt, actual knowledge on the part of Quinn.

■ The rule on a motion for a judgment of acquittal has variously been stated, but generally it is that "if a judge is of opinion that upon the evidence a reasonable mind could not find guilt beyond a reasonable doubt, he must not let the jury act, because to do so would be to let it speculate without evidence adequate in law."

2.  202 U.S. 344, 363, 365, 376, 26 S.Ct. 688; see also Record on Appeal.

3.  Judge, later Justice VanDevanter.

To submit this case to the jurors upon the evidence—or rather the lack of evidence—would permit them to engage in speculation and conjecture on the issue of knowledge. Suspicions are not a substitute for evidence.

Accordingly, the motion for a judgment of acquittal is granted.

Since the motion is granted as to Quinn, it follows it must likewise be granted as to Schwaeber and Saver, the co-defendants who are charged with aiding and abetting.