UNITED STATES of America,
Appellee,

v.

Elmer Don DAVIS, Appellant.

No. 19391.

United States Court of Appeals
Eighth Circuit.

May 28, 1969.

J. Arnot Hill, of the Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for appellant, John J. Cosgrove, Kansas City, Mo., on the brief.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for appellee, Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Elmer Don Davis, defendant-appellant, was charged in a one-count indictment of robbing the Home Savings Association in Kansas City, Missouri in violation of 18 U.S.C. § 2113 (a) and (d).[1] After trial to a jury, defendant was convicted and sentenced to the custody of the Attorney General of the United States for a period of twenty years.

The evidence presented to the jury strongly indicates that defendant committed the crime as charged in the indictment. Defendant was positively identified by the two tellers as one of two robbers who entered the Savings Association office at approximately 11:00 a.m. on July 11, 1967. The Savings Association was manned by a branch manager, Floyd M. Warr, and two tellers, Mrs. Frieda Trott and Mrs. Donna Wallin. Defendant's confederate approached Mr. Warr under the pretense of inquiring about a loan and while talking to Mr. Warr exhibited a pistol, and told him to "turn around and go through

---

1. The indictment, omitting the formal parts, charges that:

"On or about July 11, 1967, in the Western Division of the Western District of Missouri, ELMER DON DAVIS by force and violence and by intimidation did take from the person and presence of Donna Wallin and Frieda Trott $3,801.25, more or less, in money belonging to and in the care, custody, control, management and possession of the Home Savings Association, 3104 Troost, Kansas City, Missouri, the deposits of which were then insured by the Federal Savings and Loan Insurance Corporation and ELMER DON DAVIS, in committing the aforesaid acts did assault the said Donna Wallin and Frieda Trott by the use of a dangerous weapon, that is, a pistol, in violation of Section 2113(a) (d), Title 18, United States Code."

the back," and then directed him to the second floor storage room.

During this time, defendant walked up to Mrs. Trott at the first teller's window, pointed a pistol at her and told her to step back against the wall. Mrs. Wallin, who was at the teller's window immediately to Mrs. Trott's left, was also ordered by defendant to move back against the wall. Defendant then came around behind the counter, opened the two cash drawers, removed the money, and placed it in a brown paper sack. Defendant inquired about the office safe and was told it was open. Defendant's confederate reappeared and ordered the two tellers upstairs, telling them that if they or Mr. Warr came down they would be shot.

Mrs. Trott and Mrs. Wallin both positively identified defendant at the trial. Mrs. Trott testified that the only change in his appearance was that he presently had a goatee which he did not have at the time of the crime. The Government proved that defendant bought an automobile for his friend, Mrs. Walterine Waters, on July 16, 1967 (six days after the robbery), paying the sum of $450.00 in cash for it. He offered to make a down payment on a house for Mrs. Waters but she preferred an automobile.

Defendant testified in his own behalf and denied the commission of the crime. He testified that he lived with Mrs. Waters and her three children at her house, that he made his living by gambling and made good money because he was proficient at cheating; that he gambled until late at night and, therefore, customarily slept until the afternoon and did not leave the house until night; that he specifically remembered following this custom on July 11, 1967 because every year since 1956 he started a party on the Fourth of July, his birthday, and continued it until July 11 (the date of the robbery) which was the birthday of a friend. He stated that he instituted this habit when he was in the Air Force from which he was discharged for bad conduct by reason of being absent without leave. Defendant admitted convictions of five other criminal offenses.

Mrs. Waters, in attempting to buttress defendant's alibi, testified that it was defendant's custom to sleep until 1:30 or 2:00 p.m. each day since he stayed out late gambling; that he had celebrated his birthday "extensively," but that she did not remember specifically whether or not defendant followed this routine on July 11, 1967.

Defendant was represented in the trial court by an attorney for the Legal Aid and Defender Society of Kansas City. The trial attorney subsequently left this agency and in this forma pauperis appeal defendant was represented by other attorneys of the same agency.

On May 29, 1968, defendant made a pretrial motion for an order authorizing him to inspect and copy the testimony of all witnesses who appeared before the grand jury and would be Government witnesses at the trial.[2] In his "Suggestions," filed with the motion, defendant contended that he was entitled to examine the grand jury testimony without "any showing of particular need for the material." The district court overruled the motion on May 31, 1968 as being premature. The court stated, however, that "if any person who has testified before the Grand Jury testifies at the trial, the court will then pass upon any question of inspection of statements and testimony given by them." [3]

2. Defendant's motion, omitting the formal parts, is as follows:
   "1. Produce and permit the defendant to inspect and copy any and all transcripts of persons testifying before the Grand Jury incident to this action when said persons will be Government witnesses at the trial."

3. The order, omitting the formal parts, is as follows:
   "The defendant has filed motion to require the District Attorney to 'Produce and permit the defendant to inspect and copy any and all transcripts of persons testifying before the Grand Jury incident to this action when said persons will be

The sole issue raised on appeal is the propriety of the district court's denial of defendant's pretrial motion.

Defendant, relying on the opinion of the Supreme Court in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), and the opinion of the Second Circuit in United States v. Youngblood, 379 F.2d 365 (2nd Cir. 1967), contends that it is prejudicial error for the district court to refuse to allow him to inspect and copy the grand jury testimony of those persons who were to testify at the trial even though he admittedly showed no "particularized need." Defendant argues on appeal that he was entitled to the grand jury testimony to prepare an intelligent cross-examination.

In Dennis v. United States, *supra*, the petitioners sought the grand jury testimony of four government witnesses at the conclusion of their direct examination. The district court denied the motions and concluded that no "particularized need" for disclosure had been shown. Because the Supreme Court found that a "particularized need" had been shown, the case was reversed and remanded for new trial. In conclusion the Court held that a defendant is entitled to examine the grand jury minutes relating to the trial testimony of government witnesses while the witnesses are available for cross-examination when a particularized need for disclosure is shown.

Recently this court considered similar arguments as presented here based on the *Dennis* decision. In Hanger v. United States, 398 F.2d 91 (8th Cir. 1968); Stewart v. United States, 395 F.2d 484 (8th Cir. 1968); and Nat'l Dairy Products Corp. v. United States, 384 F.2d 457 (8th Cir. 1967), cert. denied, 390 U. S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968), we held that under the teachings in *Dennis* a defendant, upon timely motion, is entitled to inspect the grand jury testimony of a government witness testifying at the trial upon the showing of particularized need.

■ In Hanger v. United States, *supra*, n. 3 at 96, of 398 F.2d, Judge Gibson speaking for this court commented that "this Court disagrees with the holding in *Youngblood* to the extent that a showing of particularized need is abrogated irrespective of the circumstances." We are confronted with no new argument on this point, and are satisfied our interpretation of *Dennis* is correct.[4]

■ We note also that defendant has not contended that he was not allowed to view this testimony upon timely motion at the trial. Thus, no prejudice could be imputed to the denial of the pretrial motion. Although the record is silent as to what requests were made or as to whether defendant renewed his pretrial motion, it is apparent from a canvass of

Government witnesses at the trial.' The motion is overruled.
"At this time we believe the request is premature. If any person who has testified before the Grand Jury testifies at the trial, the court will then pass upon any question of inspection of statements and testimony given by them."

4. We elaborately discussed the timeliness of a pretrial motion for production of grand jury testimony of a prospective government witness in order to prepare cross-examination to test the witness' credibility in Hanger v. United States, 398 F.2d 91, 96 (8th Cir. 1968), and stated:

"We do not think *Dennis* commands the disclosure of a witness's grand jury

testimony prior to the time of his testimony at trial. The Court refused in United States v. Procter & Gamble Co., supra [356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)], to permit pretrial disclosure of an entire grand jury transcript in a civil case. Obviously a grand jury transcript if used at all on a hostile witness, would be used to impeach the witness or to test his credibility. This can be done at the time the witness has concluded his direct examination, and as a practical matter the grand jury transcript should be produced at the time of the direct examination so that defense counsel would have the transcript while the witness is testifying and is available for cross-examination."

the entire transcript that defendant's attorney requested and was furnished at trial the grand jury testimony and other statements made by the witnesses pursuant to the Jencks Act, 18 U.S.C. § 3500.[5]

Mrs. Trott was one of two witnesses who had appeared before the grand jury and defense counsel's questions indicated that he had possession of her grand jury testimony for cross-examination purposes. Furthermore, the record is absent any objections during the trial concerning the production of any statements or grand jury testimony. The requirement of showing a particularized need for the production of the grand jury testimony was not met and no prejudice to defendant was alleged or could have been alleged under the facts of this case by the denial of the pretrial motion.

Defendant's motion to inspect and copy the grand jury testimony prior to the trial was premature. No showing was made for a "particularized need" and it is obvious from a careful review of the trial transcript that defendant's counsel was furnished the grand jury testimony and statements he requested at the trial. Defendant suffered no prejudice and was accorded a fair trial.

The judgment of conviction is affirmed.

5. Mr. Warr did not testify before the grand jury but did give a statement to a government agent. After Warr's direct examination, defendant's attorney said:

"Judge—Your Honor, may I approach the bench, please? I want to make a request."

Defendant's attorney approached the bench and a colloquy was had with the court out of the hearing of the jury. Immediately after this colloquy, cross-examination of Warr commenced in the following manner:

"Q. Mr. Warr, you made a written statement to the Government authorities about what you recall about this incident? A. Yes, sir.

"Q. And did you sign a statement, also, incident to this matter, that someone else had written up in their own handwriting, an agent, and you signed it as being correct and true? A. Yes, sir."

At the conclusion of the direct examination of Mrs. Trott, defendant's attorney said:

"Your Honor, I'd like to make the same request I made of the previous witness.

"THE COURT: All right. If you have any statements, give them to him."

Upon the commencement of cross-examination, defendant's attorney asked Mrs. Trott:

"How many times did you testify before a grand jury with respect to this incident? A. That was the first and only time."