**UNITED STATES of America,**
**Appellee,**

v.

**Thomas F. JOHNSON, Appellant.**
**No. 12129.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1969.
Decided Dec. 9, 1969.

Certiorari Denied March 30, 1970.
See 90 S.Ct. 1235.

Harry L. Ryan, Jr., Washington, D. C., Joseph Sharfsin, Philadelphia,. Pa. (Robert T. Barbour, La Plate, Md., and Whiteford, Hart, Carmody & Wilson, Washington, D. C., on brief), for appellant.

Nevett Steele, Jr., and Barnet D. Skolnik, Asst. U. S. Attys. (Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Thomas F. Johnson appeals his conviction for violations of 18 U.S.C. § 281 (1958 ed.), the conflict of interest statute.[1] He was found guilty on counts 2 through 8 of an indictment which charged that he, as a Congressman, had received payment for attempting to have the Justice Department dismiss a mail fraud indictment against the officers of a savings and loan association. Finding no error, we affirm.

---

1. The portion of 18 U.S.C. § 281 (1958 ed.), under which Johnson was convicted, provides:

"Whoever, being a Member of * * * Congress, * * * directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

Section 281 was repealed in 1962. Substantially similar provisions are now contained in 18 U.S.C. § 203(a) (1964 ed.).

This appeal concerns Johnson's second trial. He formerly was convicted on all counts of the indictment, including a conspiracy count which was based in part on a speech he made in Congress. We reversed, holding that the speech or debate clause of Art. I, § 6, of the United States Constitution barred conviction on the conspiracy count and that he should be granted a new trial on the other counts. The Supreme Court affirmed on the constitutional issue, but authorized Johnson's retrial on the conspiracy count with all reference to the speech eliminated.[2] On remand, however, the district court granted Johnson's motion, to which the government offered no objection, for dismissal of the conspiracy count. He was then tried by the court without a jury and found guilty on the remaining substantive counts which had nothing to do with his speech.

## I.

▮ Johnson contends that the counts of the indictment on which he was convicted are invalid because the grand jury that returned them heard evidence concerning his Congressional speech. Johnson's argument, however, is foreclosed by authorities that we deem controlling.[3] In Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), Mr. Justice Black wrote:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a de-

fendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

▮ Johnson seizes on the term "unbiased grand jury" in Costello, and argues that the grand jury which indicted him was biased because it heard testimony of his Congressional speech. Bias of a grand jury may be manifested in several ways,[4] but it has not been held to arise from the receipt of incompetent or constitutionally impermissible evidence. Costello dealt with an indictment founded on hearsay evidence, but the rule it states is applicable to sustain an indictment returned by a grand jury that heard evidence obtained in violation of the Constitution.[5] Of course, the tainted evidence would not be admissible in the trial of the case, but this presents no problem here. The count of the indictment that dealt with the speech was dismissed, and the speech played no part in the proof of the remaining counts.

▮ Johnson also argues that his appearance before the grand jury was involuntary, and therefore the indictment must be dismissed. The district judge conducted an extensive hearing on the motion to dismiss. The evidence disclosed, among other things, that Johnson is a lawyer who formerly served as a

2. United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), aff'g 337 F.2d 180 (4th Cir. 1964). The facts are fully set forth in these opinions and need not be repeated here.

3. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); United States v. Blue, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (dictum).

4. For example, in Costello, Mr. Justice Black illustrated this point by citing Pierre v. Louisiana, 306 U.S. 354, 59 S. Ct. 536, 83 L.Ed. 757 (1939), which dealt with the systematic exclusion of Negroes from the grand jury. See Costello v. United States, 350 U.S. 359, 363 n. 7, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

5. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); see United States v. Blue, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (dictum).

state prosecuting attorney. He is familiar with grand jury procedures, and he knew that his testimony before the grand jury could be used against him. Before his appearance, he conferred with officials of the Department of Justice, who informed him that he was a potential defendant and that if he testified he would have to appear voluntarily.

The district judge stated an abundance of historical facts that led to his ultimate findings that Johnson's appearance before the grand jury was voluntary, that he was fully aware that his activities were under investigation by the grand jury, and that his appearance before the grand jury was a calculated risk.[6]

We conclude that the district court properly denied Johnson's motion to quash the indictment.

## II.

■ Johnson argues that recent decisions[7] allow automatic access to grand jury testimony and that no longer must a defendant make a showing of particularized need for examining the grand jury's minutes. None of these decisions, however, require disclosure of all grand jury testimony as a matter of right. The Second and Seventh Circuits afford the broadest disclosure for the purposes of impeachment. There, in the absence of sound reasons for a protective order, a defendant may examine the grand jury testimony of a witness on subjects about which the witness testified at the trial.[8]

Johnson's access to grand jury testimony was adequate. He was allowed to inspect and copy his own grand jury testimony before trial. The government furnished the testimony of prosecution witnesses after their direct examination, and agreed to make available to Johnson the testimony of defense witnesses at the conclusion of their direct testimony if the government intended to impeach these witnesses through use of their grand jury testimony.

■ Johnson sought, but was denied, all grand jury testimony concerning his speech. We find no error in this. The count concerning the speech was dismissed. For the purposes of the motion to quash the remaining counts, the government conceded that testimony concerning the speech constituted about 17 per cent of all grand jury testimony. The district court's reasons, and ours, for sustaining the remaining counts do not rest on the premise that the testimony concerning the speech was insignificant. Recognizing that this evidence was a substantial part of all that the grand jury heard, we have held, nevertheless, for the reasons stated in Part I, that the remaining counts are valid.

We also find no error in the district court's denial of Johnson's request for the grand jury testimony of defense witnesses. Here the need for impeaching evidence that underlies the reason for allowing access to the testimony of prosecution witnesses did not exist. Moreover, Johnson had a transcript of the testimony which defense witnesses gave at his former trial.

6. Even if the facts were otherwise, suppression of the tainted evidence at trial, instead of dismissal of the indictment, might be sufficient—a point which we need not decide here. See United States v. Blue, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (dictum).

7. E. g., Dennis v. United States, 384 U.S. 855, 868, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Amabile, 395 F.2d 47, 52 (7th Cir. 1968), vacated on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, 479 (1968); United States v. Youngblood, 379 F.2d 365, 366 (2d Cir. 1967); Gibson v. United States, 131 U.S.App. D.C. 143, 403 F.2d 166, 168 (1968) (dictum).

8. United States v. Amabile, 395 F.2d 47, 52 (7th Cir., 1968), vacated on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L. Ed.2d 297 (1969); United States v. Youngblood, 379 F.2d 365, 366 (2d Cir. 1967). But see United States v. Davis, 410 F.2d 959, 961 (8th Cir. 1969).

### III.

 We find no merit in a number of other errors Johnson assigns. They do not require extended discussion. Among them is his contention that 18 U.S.C. § 281 (1958 ed.)[9] is unconstitutional on the ground that it fails to require scienter. The indictment charged, and the district court expressly found, that Johnson acted "knowingly".[10] Johnson, however, argues that neither the indictment nor the court's findings can supply the missing element of scienter to the statute. Courts, however, can read scienter into a statute when it appears Congress implicitly intended that it must be proved. Cf. Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The statute punishes a Congressman who "receives * * any compensation" for prohibited services. Compensation is "payment for * * service rendered."[11] Thus it is clear that Congress did not intend to punish a Congressman for receiving a gift, contribution, or remuneration for a service not prohibited by the statute. Because receipt of money may or may not be condemned by the statute, it is reasonable to assume that Congress intended knowledge of the nature or purpose of the receipt to be a necessary element of the crime. Other courts have reached the same conclusion. Taussig v. McNamara, 219 F.Supp. 757, 760 (D.D.C.1963), cert. denied, 379 U.S. 834, 85 S.Ct. 65, 13 L.Ed.2d 41 (1964); United States v. Quinn, 141 F.Supp. 622, 626 (S.D.N.Y.1956). We hold, therefore, that the statute implicitly requires scienter.

■ Contrary to Johnson's assertion, the evidence is sufficient to support his conviction. His assignment of error concerning the destruction of F.B.I. notes was also raised in his first appeal, and we adhere to the discussion of the subject in our earlier opinion. United States v. Johnson, 337 F.2d 180, 201 (4th Cir. 1964).

The judgment is

Affirmed.

---

9. Note 1, supra, contains the pertinent part of the statute.

10. Pursuant to Fed.R.Crim.P. 23(c), the district judge specially found the facts, stating in part:

"The Court, therefore, finds that the payments received by Johnson * * * were in substantial part * * * received knowingly by Johnson as a member of Congress for services rendered and to be rendered, as such member, in relation to a proceeding in which the United States was a party before the Department of Justice; and that his purported employment for other legal services was in large part a sham, to try to cover up the payments for his services before the Department of Justice."

11. Webster's Third New International Dictionary (1964).