**UNITED STATES of America**

v.

**Clifford C. LORD.**

**Crim. No. 88–138–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 9, 1989.

---

James A. Metcalfe, Asst. U.S. Atty., Norfolk, Va., Ellen R. Meltzer, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Patricia W. Lemley, Norfolk, Va., for defendant.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on defendant Clifford C. Lord's Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the Alternative, for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

On December 1, 1988, the grand jury returned a seven-count indictment charging Clifford C. Lord with two counts of conflicts of interest (18 U.S.C. § 208(a)), four counts of making false statements (18 U.S.C. § 1001), and one count of obstruction of justice (18 U.S.C. § 1505). After seven days of evidence and argument, a jury found defendant Lord guilty of the conflicts counts (Counts 1 and 2) and the obstruction count (Count 7). The jury found the defendant not guilty on the four false statement counts (Counts 3, 4, 5 and 6).

The conflicts of interest counts charge that the defendant, while program manager of the Intra–Fleet Supply Support Operations Program, participated personally and substantially in two government contracts with Dyn Logistics Services, Inc., in which CFE Services, Inc., a company with which he was negotiating or had an arrangement concerning prospective employment, had a financial interest. The obstruction count alleged that the defendant made false and misleading statements concerning an employment offer from CFE Services, Inc. during a Judge Advocate General (JAG) Manual investigation conducted by the Department of the Navy. The four false statement counts alleged that defendant Lord made false statements to his superiors in the Navy with respect to his post-retirement plans.

The defendant argues that he is entitled to a judgment of acquittal or a new trial for the following reasons: (1) the government should have been required to prove specific intent with respect to the conflict of interest charges; (2) because the government was required to prove specific intent, defendant was entitled to a reliance of counsel instruction; (3) there was no evidence of a knowing false statement in connection with the obstruction charge; (4) the jury's acquittal of defendant on the false statement charges and conviction on the obstruction charge are inconsistent and should not stand; and (5) the Court should have allowed defendant's counsel to refer to demonstrative exhibits during closing argument. The defendant has also requested to examine all witness and grand jury statements in order to determine if there are outstanding *Brady v. Maryland* materials.

■ The defendant's first argument is that the Court erred by not requiring the government to prove that defendant acted with a specific intent to violate the conflict of interest laws. Defendant cites *United States v. Johnson*, 419 F.2d 56 (4th Cir. 1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1235, 25 L.Ed.2d 423 (1970), as support for the proposition that specific intent is an element of 18 U.S.C. § 208(a). The Court notes that while *Johnson* involved 18 U.S.C. § 203(a), the congressional conflict of interest statute, the Fourth Circuit's construction of Section 203(a) is instructive in determining the scope of Section 208(a). The legislative history indicates that Sections 203(a) and 208(a), as well as other conflict of interest and bribery statutes, were consolidated and amended by Congress in 1962. S.Rep. No. 2213, 87th Cong., 2d sess., *reprinted in* 1962 U.S. Code Cong. & Ad.News, 3852–53. One of the purposes of the amendment with respect to the conflict of interest laws was to simplify and strengthen the conflict laws presently in effect. *Id.* Therefore, the legislative history suggests that conflict of interest statutes, including Section 208(a) and Section 203(a), should be accorded similar statutory construction.

In *Johnson*, the Fourth Circuit addressed the question of whether scienter is an ele-

ment of the predecessor statute to Section 203(a).[1] Section 203(a) does not contain the word "knowingly," while Section 203(b) explicitly uses the word "knowingly." The *Johnson* court found that scienter can be read into a statute when Congress implicitly intended that it must be proved. The Fourth Circuit accordingly held that, "[I]t is reasonable to assume that Congress intended knowledge of the nature or purpose of the receipt to be a necessary element of the crime." *Johnson*, 419 F.2d at 60. While *Johnson* stands for the proposition that knowledge or scienter is an essential element of Section 203(a), *Johnson* does not suggest that specific intent is a requisite element. The *Johnson* court's citation to *United States v. Quinn* suggests the very opposite. In *United States v. Quinn*, 141 F.Supp. 622, 627 (S.D.N.Y.1956), the district court held that, "[I]t is not necessary ... to find specific intent—a conscious purpose of wrongdoing, or evil motive—but nonetheless knowledge there must be...."

Moreover, other circuit courts have held that specific intent is not an element of Section 203(a), the congressional conflict of interest statute. *United States v. Evans*, 572 F.2d 455, 481 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Podell*, 519 F.2d 144 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975). The Fifth Circuit in *Evans* found that, "The gravamen of each offense, then, is not an intent to be corrupted or influenced, but simply the acceptance of an authorized compensation." *Evans*, 572 F.2d at 481. Finally, the Fourth Circuit has construed the words "knowingly and willfully" in a different statutory context, and found that they did not require proof of specific intent. *United States v. Moore*, 586 F.2d 1029 (4th Cir.1978). *See also, United States v. Schackleford*, 738 F.2d 776, 781 (7th Cir. 1984) (extortion statute requiring "knowing participation" is not a specific intent crime); *United States v. Udofot*, 711 F.2d 831, 835–36 (8th Cir.), *cert. denied*, 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983)

(use of the word "knowingly" in federal firearms laws does not require specific intent).

In *United States v. Moore*, the defendant attempted to go through an airport checkpoint with a loaded revolver in his brief case. The defendant was convicted of "knowingly and willfully" violating a regulation proscribing the possession of a weapon at the Washington National Airport. The Fourth Circuit found the regulation's requirement that the act be done knowingly required proof that defendant knew the weapon was in the brief case. The regulation did not require proof that defendant intended to employ the weapon in some other criminal conduct or that he knew of the regulation. The Fourth Circuit accordingly held that the words "willfulness and knowledge" do not require the United States to prove "specific intent to do something ... the law forbids." *Moore*, 586 F.2d at 1032.

Accordingly, the Court finds that specific intent is not a requisite element of 18 U.S. C. § 208(a), and that the jury was properly given a general intent instruction with respect to Counts 1 and 2 of the indictment. Because the conflict of interest charge does not require proof of specific intent, the defendant was not entitled to an instruction on the defense of advice of counsel. *See e.g., United States v. Miller*, 658 F.2d 235 (4th Cir.1981); *United States v. Polytarides*, 584 F.2d 1350 (4th Cir.1978); *United States v. Painter*, 314 F.2d 939 (4th Cir.), *cert. denied*, 374 U.S. 831, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963).

■ The defendant next asserts that there was no evidence of a knowing false statement made in connection with the obstruction of justice charge. The interview notes of Captain Paul Tully, who conducted the JAG Manual investigation, reveal that Captain Tully asked defendant, "When were you first approached by CFE, Dyn–Logistics or Dyn–Election?" (Gov't. Ex. 18C). Captain Tully's notes reflect that

---

1. The predecessor statute to 18 U.S.C. § 208(a) and the statute at issue in Johnson was 18 U.S.C. § 281. Section 281, which was repealed in 1962, is substantially similar to Section 203(a) in that the word "knowingly" is absent from both statutes.

defendant answered that July 28 was when he was first approached. Captain Tully's summary of the interview corroborates defendant's statement that he had no discussions concerning employment with Dyn Logistics, Dynelection or CFE Services, Inc. prior to July 28 (Gov't. Ex. 18D).

Defendant argues that the testimony of Floyd Crosslin, president of CFE Services, indicates that a conversation regarding employment may have taken place on July 28 and therefore defendant's statement to Captain Tully was not false. The Court finds, however, that Mr. Crosslin testified extensively about two meetings between himself and defendant which occurred in January of 1984. Mr. Crosslin testified that at these January meetings, defendant signed a contract for post-retirement employment. Accordingly, if the jury chose to believe Mr. Crosslin's testimony, they could find that defendant had discussed employment with CFE Services prior to July 28 and therefore defendant's statement to Captain Tully was false. The Court finds sufficient evidence in the record to support the jury's verdict of guilty on the obstruction of justice count.

■ Defendant also argues that his acquittal on the four false statement charges (Counts 3, 4, 5 and 6) and conviction on the obstruction charge (Count 7), which all alleged the same falsity, are inconsistent and should not stand. In *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), Justice Holmes stated:

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . .
>
> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

The court has recently reaffirmed the soundness of the *Dunn* rule. *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984). The court in *Powell* also noted that an inconsistent verdict is often a product of a jury lenity and therefore favors the criminal defendant. *Id.* at 65, 105 S.Ct. at 476. Accordingly, the Court finds that the allegedly inconsistent verdicts in this case do not constitute sufficient grounds to set aside the jury's finding of guilty as to Count 7.

■ Finally, defendant argues that the Court erred in refusing to allow defendant's counsel to refer to demonstrative exhibits during closing argument. The exhibits at issue summarized the testimony of several witnesses in order to illustrate what the defendant perceived as gaps in the government's case. The government objected to the exhibits, and the Court sustained the objection. While the Court did not allow defendant to refer to the exhibits during closing argument, defendant was allowed to orally argue what the various witnesses had stated on the stand.

The Court initially notes that the Fourth Circuit has held that the use of summary charts in tax evasion trials is within the trial court's discretion. *United States v. Keltner*, 675 F.2d 602, 605 (4th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed. 2d 71 (1982). *See also, United States v. White*, 766 F.2d 22, 25 (1st Cir.1985) (use of trial aids submitted to trial court's discretion). While the Court is aware that this is not a tax evasion case, the courts have never drawn any formal distinction between the use of summaries in tax cases and in other types of criminal cases. *United States v. Scales*, 594 F.2d 558, 563 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). The danger of summary exhibits, particularly as in this case where the exhibits excerpt witness testimony, is that the jury might rely upon the statements in the exhibits rather than upon their own independent recollection. Similarly, the jury might rely upon the facts as alleged in the exhibit as a substitute for assessing the credibility of witnesses. *Scales*, 594 F.2d at 564. The Court finds that it properly exercised its

discretion in refusing to allow defendant's counsel to refer to the summary exhibits during closing argument.

Accordingly, defendant Lord's Motion for Judgment of Acquittal, or in the Alternative, for a New Trial is DENIED.

■ Finally, defendant has also requested that he be allowed to examine all witness and grand jury statements in order to determine if there is any outstanding *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) material. The defendant argues that because of "the government's previous failures to provide favorable evidence," the defense should be granted access to the government's files.

The holding in *Brady v. Maryland* requires the disclosure of evidence favorable to the accused and "material either to guilt or punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The government is under a continuing duty to disclose any exculpatory evidence prior to or during trial. Fed.R. Crim.P. 16(c). While Rule 16 suggests that the government does not have a post-trial duty to disclose *Brady* materials, the court's language in *Brady* suggests that the government's duty of disclosure continues until the day of sentencing. Assuming that the duty of disclosure under *Brady* continues until the sentencing date, the defendant's request to peruse the government's files for exculpatory material is unfounded. The *Brady* rule does not require the government to deliver their entire file to defense counsel. *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985). Similarly, *Brady* does not establish a "duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). *See also, United States v. Michaels,* 796 F.2d 1112, 1115–16 (9th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed. 2d 845 (1987) (speculation about materials in government files does not require disclosure).

The defendant's allegations that the government's previous failure to provide *Brady* materials does not entitle defendant to unrestricted access to the government's files. The defendant has failed to allege that the information which the government previously failed to disclose "might have affected the outcome of the trial" and was therefore discoverable *Brady* material. *Agurs,* 427 U.S. at 104, 96 S.Ct. at 2397. Moreover, the defendant's conclusory allegations fail to assert a claim of government misconduct or bad faith which would merit further inquiry by the Court. Accordingly, defendant's request to examine all witness and grand jury statements is DENIED.

The Clerk is DIRECTED to send a copy of this Order to counsel for the defendant and to the United States Attorney.

IT IS SO ORDERED.