902 F.2d 1567
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford C. LORD, Defendant-Appellant.
 No. 89-5079.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1990.
Decided April 26, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CR-88-138-N)
 Patricia Wendy Lemley, Jones, Lemley & Carlson, Norfolk, Va., for appellant.
 Thomas Ernest Booth, United States Department of Justice, Washington, D.C. (argued), for appellee; James T. Metcalfe, Ellen R. Meltzer, Judith B. Wish, United States Department of Justice, Washington, D.C.; Henry E. Hudson, United States Attorney, Norfolk, Va., on brief.
 E.D.Va., 710 F.Supp. 615.
 AFFIRMED.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Clifford C. Lord appeals his conviction in the United States District Court for the Eastern District of Virginia on two counts of conflict of interest, in violation of 18 U.S.C. Sec. 208(a), and one count of obstruction of justice, in violation of 18 U.S.C. Sec. 1505. He asserts that the district court erred in failing to instruct the jury that a defendant must know he is violating the law in order to violate the conflict of interest statute. In addition, he maintains that the jury verdict on the obstruction of justice charge was not supported by substantial evidence and was impermissibly inconsistent with his acquittal on charges of making false statements, that he should have been granted a new trial based on his post-trial discovery of new evidence, and that the conflict of interest statute is unconstitutionally vague. Finding no merit in any of these contentions, we affirm the judgment of the district court.
 
 I.
 
 2
 Prior to his retirement on August 23, 1984, Clifford C. Lord served as a commander in the United States Navy, where he directed the Navy's Integrated Supply Support Operations Program (ISSOP). Lord began his tenure as director of ISSOP in 1981. ISSOP, a branch of the Navy Supply Systems Command (NAVSUP), administers Navy programs under which civilian defense contractors place secondary supplies on Navy ships rather than storing them in Navy warehouses.
 
 
 3
 During 1981 and 1984, ISSOP administered two contracts between the Navy and Manufacturer's Packaging Company (MPC). According to the terms of these contracts, ISSOP was authorized to issue delivery orders to MPC whenever ISSOP needed a job done, to supervise and inspect the work done by MPC, and to certify that MPC was entitled to payment for its work. The two contracts were valued at over $35 million.
 
 
 4
 In March or April 1983, Dynalectron, a defense contractor, acquired MPC. Dynalectron also owned CFE Services (CFE), a company providing cargo handling services to the Navy. In February 1984, MPC changed its corporate name to DYN Logistics. Under Dynalectron's corporate structure, DYN Logistics reported to CFE, which in turn reported to Dynalectron.
 
 
 5
 On December 28, 1983, Lord gave formal notice of his intention to retire from the Navy effective October 1, 1984. During the first week of January 1984, CFE President Floyd Crosslin discussed with MPC's officers the possibility of hiring Lord after his retirement. Several days later, Crosslin met with Lord in the CFE offices in Norfolk, Virginia. Crosslin reviewed Lord's resume, discussed the company's salary and benefits structure, indicated that Lord would be qualified to be a director of supply systems, and informed Lord that he would be back in touch with him.
 
 
 6
 On January 13, 1984, Crosslin offered Lord a post-retirement job with CFE, which Lord accepted. Lord signed an employment agreement setting forth, among other things, his salary and benefits, and indicating that he would start work on October 1, 1984, if the Navy had released him by that time. Both Crosslin and Lord retained copies of the agreement.
 
 
 7
 Lord did not inform his superior, Captain Joel Butler, that he had accepted the job with CFE. However, he did mention to three of his subordinates during February and April 1984 that he had accepted a job with a defense contractor. In March, a DYN Logistics employee informed Lord that he knew Lord would be working for CFE following his retirement. Lord told the employee not to mention his plans to anyone else.
 
 
 8
 In March 1984, after Lord had accepted the CFE job offer, ISSOP requested DYN Logistics to survey ISSOP's bar code inventory system. ISSOP and DYN Logistics agreed that the job should be subcontracted to CFE because DYN Logistics was short on manpower. During March and September, CFE employee Fred Greenway, under Lord's supervision, conducted the survey. Lord knew Greenway to be a CFE employee since he had had frequent meetings with Greenway, Greenway had identified himself to Lord as a CFE employee, and Greenway submitted his progress reports to Lord on CFE letterhead. The survey cost the government approximately $40,600.
 
 
 9
 Also in March 1984, Lord proposed that ISSOP develop a new financial management system using computer technology (ISSOFMS). Lord recommended to his superiors that CFE be chosen for the project since it had recently lost a major government contract and therefore had computer technicians available to do the work. On June 15, 1984, ISSOP awarded the ISSOFMS project to DYN Logistics, which in turn subcontracted the project to CFE. During June and August 1984, Lord issued delivery orders, met with CFE employees to discuss the project, monitored CFE's progress reports, and authorized payment to CFE. The ISSOFMS project cost the Navy approximately $166,075.
 
 
 10
 During the summer of 1984, the Navy solicited bids for new contracts to replace the ISSOP contracts which were due to expire. Dynalectron and SEACOR were the two primary bidders for the new contracts.
 
 
 11
 On August 1, Lord encountered Ralph M. Thompson, Jr., a NAVSUP attorney, and informed him that he had been offered a post-retirement job by Dynalectron. Lord indicated, however, that his future employment was not related to ISSOP, and did not mention that he had signed an employment contract with CFE the previous January. Thompson informed Lord that because Dynalectron was bidding on the new ISSOP contracts, Lord could not continue to work at ISSOP. He further directed Lord to notify his superior of every defense contractor with which he had engaged in employment negotiations, and to request relief from all duties involving any contractor with which he had negotiated.
 
 
 12
 On August 2, Lord sent a memo to Captain Butler indicating that he had been contacted by five defense contractors, including CFE, and that he would probably accept employment with one of them. Lord also indicated in the memo that he did not think there was any conflict of interest since the bidding on the ISSOP contracts was to be closed. Lord did not disclose that he had signed the employment contract with CFE. Lord later met with Butler and told him that the memo had been sent at Thompson's direction. In addition, Lord phoned Thompson and told him that he was no longer considering employment with a defense contractor, but rather was going to start his own consulting firm.
 
 
 13
 On August 16, the Navy announced that SEACOR was the low bidder on the ISSOP contracts. On August 23, Lord phoned Thompson and informed him that he was considering a post-retirement job with SEACOR. Thompson advised Lord that his employment negotiations with SEACOR had placed him in a conflict of interest and that he must cease working with ISSOP. Subsequently, Thompson discovered that Lord was scheduled to tour SEACOR's facilities with a Navy inspection team to insure SEACOR could perform the contract. Thompson phoned Butler and told him that Lord could not work with ISSOP. Butler summoned Lord and directed him to prepare an updated list of all companies with which he had had employment negotiations.
 
 
 14
 On August 23, Lord requested relief from his duties as ISSOP program director because of his recent job offers from CFE and SEACOR. He insisted, however, that he had not made any definite plans regarding post-retirement employment. Captain Butler removed Lord from his position and reassigned him to other duties.
 
 
 15
 On September 5, Lord met with Crosslin and requested that Crosslin destroy the January employment contract and replace it with one bearing a September date. Crosslin agreed, and his secretary typed the new contract.
 
 
 16
 On September 6, Lord phoned Thompson and informed him that he had accepted employment with CFE. Thompson told him that he may have violated the federal conflict of interest statute by negotiating with CFE while working at ISSOP.
 
 
 17
 The Navy instituted an investigation into whether Lord had engaged in a conflict of interest. Lord was interviewed by Captain Albert Tully, and informed him that he was first contacted by CFE on July 27 or 28. He denied that he was currently employed or had ever been employed by CFE, DYN Logistics, or Dynalectron. Crosslin was also interviewed and denied offering employment to Lord. No charges were brought against Lord at this time. In October 1984, Lord retired from the Navy and began work at CFE.
 
 
 18
 Subsequently, a federal investigation was instituted into Lord's conduct. Crosslin admitted that he had lied previously, and that Lord had in fact accepted employment in January 1984. Charges were filed, and Lord was indicted and then tried before a jury. On February 15, 1989, he was found guilty on two counts of conflict of interest, in violation of 18 U.S.C. Sec. 208(a), and one count of obstruction of justice, in violation of 18 U.S.C. Sec. 1505. He was acquitted on four counts of making false statements, in violation of 18 U.S.C. Sec. 1001. He was sentenced to five years imprisonment and three years probation, with all but three months of the prison term suspended.
 
 
 19
 This appeal followed.
 
 II.
 
 20
 Lord argues that the district court erred in failing to instruct the jury that a defendant must know he is violating the law in order to violate the conflict of interest statute. He also contends that the district court should have instructed the jury that notifying either one's superior or an attorney of the conflict of interest is a defense to violation of the statute.
 
 
 21
 These arguments are without merit. The conflict of interest statute does not contain the type of specific intent requirement which Lord is seeking to read into it. There is nothing in the statute to indicate that a government employee must know his conduct violated the law in order for there to be a violation of the statute. Rather, the language of the statute makes plain that the statute is violated if any executive employee "participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a ... contract ... in which, to his knowledge ... any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest." 28 U.S.C. Sec. 208(a). The Supreme Court stated concerning the predecessor statute to Sec. 208(a) that "the statute establishes an objective, not a subjective, standard, and it is therefore of little moment whether [the employee] thought he was violating the statute, if the objective facts show that there was a conflict of interest." United States v. Mississippi Valley Co., 364 U.S. 520, 560-61 (1961). There is nothing in the legislative history of Sec. 208(a) to indicate that Congress intended to change this aspect of the conflict of interest statute.
 
 
 22
 Nor can Lord avoid culpability by asserting that he told either Captain Butler or attorney Thompson about his conflict of interest. These defenses were not asserted at trial or grounded in the evidence. Lord's defense at trial was not that he informed his superiors or counsel of his conflict of interest, but rather that he had no financial interest in CFE at the time he was supervising the two CFE projects. Moreover, in the absence of a statutory requirement of specific intent, these defenses are legally insufficient as well. See Mississippi Valley, 364 U.S. at 561 ("Neither [the conflict of interest statute] nor any other statute empowered [the government employee's] superiors to exempt him from the statute, and we are convinced that it would be contrary to the purpose of the statute for this Court to bestow such a power upon those whom Congress has not seen fit to so authorize.").
 
 III.
 
 23
 Lord next maintains that the jury verdict on the obstruction of justice count was not supported by substantial evidence and was impermissibly inconsistent with his acquittal on four counts of making false statements. We disagree. On appeal of a criminal conviction, the jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Our review of the record reveals that there was more than ample evidence from which the jury could conclude that Lord obstructed the investigation of Captain Tully. When asked by Tully to state the first time he was contacted by CFE, Lord responded with a date in July 1984. There was clearly sufficient evidence for the jury to conclude that this was a misstatement and that Lord had first been contacted sometime in January 1984 at or near the time of his signing of the employment contract.
 
 
 24
 Nor was the guilty verdict on the obstruction of justice count necessarily inconsistent with Lord's acquittal on the false statement counts. The four false statement counts were predicated on four memos sent by Lord to his superiors in which he referred to his contacts with CFE but did not disclose his employment contract. It is not inconsistent for the jury to have concluded that the government failed to prove that the statements in the memos were intentionally false, and yet also to have concluded that the government met its burden in proving that Lord obstructed the investigation of Captain Tully. Moreover, even if the verdicts were inconsistent, such inconsistency would not require reversal of the obstruction verdict since the verdict was supported by substantial evidence. See United States v. Powell, 469 U.S. 57, 63-65 (1984); United States v. Tinsley, 800 F.2d 448, 450-52 (4th Cir.1986).
 
 IV.
 
 25
 Finally, Lord argues that he ought to have been granted a new trial based on evidence discovered after trial, and that the conflict of interest statute is unconstitutionally vague. Both of these contentions are without merit. The letter which Lord maintains is new evidence was not in fact new evidence since he had had it in his possession since 1984 and in fact referred to it during his cross-examination of Crosslin at trial. Moreover, the fact that the letter was found among Lord's personal belongings demonstrates his lack of due diligence in locating the letter and provides another reason why he is precluded from gaining a new trial based on its discovery. See United States v. Prior, 546 F.2d 1254, 1259 (5th Cir.1977). Most importantly, the new evidence would not probably produce an acquittal at a new trial. The "newly discovered" letter is dated September 5, 1984, and contains a formal offer of employment from Crosslin to Lord. As the district court noted, however, the question of employment documents was "thoroughly aired and thoroughly reviewed before the jury." It is unlikely that this additional piece of evidence would have altered the jury's verdict.
 
 
 26
 As to Lord's contention that the conflict of interest statute is unconstitutionally vague, it is well-settled that if a defendant's conduct falls within the core prohibitions of a statute, he may not successfully challenge the statute for vagueness. See Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 & n. 7 (1982). Here, Lord conducted Navy business with a firm with which he had previously accepted employment, clearly core conduct prohibited by Sec. 208. He therefore cannot challenge Sec. 208 for vagueness. Moreover, even if he could challenge the statute, we believe that the statute is sufficiently clear to survive an attack on vagueness grounds. See United States v. Conlon, 628 F.2d 150, 154-55 (D.C.Cir.1980).
 
 V.
 
 27
 For the foregoing reasons, the judgment of the district court is
 
 
 28
 AFFIRMED.